Love Petroleum Co. *v.* Atlantic Oil Producing Co. *et al.*

(Division B.  Feb. 19, 1934.).

[152 So. 829.  No. 31061.]

(Division B.  March 19, 1934.)

[153 So. 389.  No. 31061.]

Green, Green & Jackson, of Jackson, for appellant.

264

**Alexander, Alexander & Satterfield,** of Jackson, for appellees.

Argued orally by **Forrest B. Jackson,** for appellant.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant, Love Petroleum Company, filed a bill in the chancery court of Rankin county alleging that it was the owner and in possession of eighty acres of land in said county, describing it, the title of which was deraigned from the Gulf States Creosoting Company as a common source of title of all the parties; that on March 12, 1929, the Gulf States Creosoting Company executed to John H. Ganzell an oil and gas lease upon said eighty acres; that on April 3, 1929, Ganzell assigned said lease to the Atlantic Oil Producing Company, and thereafter, prior to September 19, 1932, the Atlantic Oil Producing Company assigned the lease to the Public Service Corporation, but this last assignment has not been recorded.

The contract was made an exhibit to the bill and introduced in the agreed statement of facts, the pertinent parts thereof reading as follows: "If no will be commenced on said land on or before the —— day of March, 1930, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to

the lessor, or to the lessor's credit in The Merchants Bank & Trust Company Bank at Jackson, Mississippi, which bank and its successors are the lessor's agent and which shall continue as the depository regardless of changes in the ownership of said land, the sum of one dollar ($1.00) per acre, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.''

This contract was executed and delivered on March 12, 1929, but the date therein on which the payments should be made as continuing the lease if the developments had not taken place within the year was not filled in; it was left blank.

The bill alleged that it was the intention of the parties that the lessee was given the exclusive right to mine and operate for gas and oil, but that such right was to be diligently pursued, and that the yearly rentals, as set forth, were purely nominal and did not represent a true rental value, being secondary to the anticipated development of the land for the production of gas and oil in commercial quantities. It further alleged that there was extensive development in the Jackson gas and oil fields, and the eighty acres involved in the case at bar were in the middle of the Jackson field; that the lease had been executed three years prior to the forfeiture thereof, and that no attempt had been made to operate for gas or oil, and that the lessees were attempting to hold the land for speculative and exploitation purposes. It was

further alleged that the lessees had forfeited all rights to said lease, and that it had terminated, because although the lease specifically provided for the payment of a stipulated rental of one dollar per acre on or before the 12th day of March of each year in event a well was not commenced the preceding year, yet the lessees had wholly failed, neglected, and refused to pay said rentals or tender same on or before March 12, 1932; that lessees well knew, on that date, that natural gas is a fugacious and volatile substance, and moves about from place to place, and was being withdrawn, in large quantities, from said eighty acres so leased, by reason of other producing wells; and that so knowing, said lessees failed, neglected, and refused to pay the rentals or make tender thereof. It was further alleged that on March 17, 1932, the Merchants' Bank & Trust Company, depository named in the lease, received a letter inclosing a cashier's check on the Mercantile Bank & Trust Company of Dallas, Texas, for eighty dollars; that said tender was not proper, not being in lawful cash and insufficient, and was refused and returned; and that thereafter there has been no tender of rentals due on March 12, 1932. That although the lessor has attempted to obtain a release, the lessees have refused to execute and deliver such release, and have continued to assert and claim a right under the lease. And the bill then prayed for relief and cancellation of the lease.

The defendants (appellees) filed a joint answer categorically denying the material averments of the bill, and specifically denying that there was any failure to comply with the terms of the lease and make tender or payment on or before March 12, 1932, of the rentals required thereunder, but asserted that the said lease contract was still in full force and effect by reason of that fact; that the owner of the lease, the Public Service Corporation of Mississippi, had sent a cashier's check drawn on the Dallas bank to the named depository at

Jackson, which depository had been notified by the Gulf States Creosoting Company, the original lessor, not to accept any further payment of rentals on said lease; and that the check was returned by the depository to the Public Service Corporation, which then sent said check to the Gulf States Creosoting Company, which accepted the same. That thereafter in March, 1933, a tender in cash was made by the Public Service Corporation to the Gulf States Creosoting Company, which was refused, and that thereafter a check on the First National Bank of Hattiesburg was sought to be delivered to the depository in Jackson, which returned it to the Public Service Corporation, whereupon the Public Service Corporation sent the check to the Gulf States Creosoting Company asking for instructions, but that all letters were wholly ignored. They averred every effort to make payment, but said that the payments have been ignored or refused, and therefore waived by the Gulf States Creosoting Company, predecessor in title of the complainant, and that the bill should be dismissed.

The lease did not name specifically the date on which the payment should be made, but left the specific date blank. The lease was for five years, and the provision was that, if developments were not started within twelve months, one dollar per acre should be paid for each subsequent year on the land.

On March 5, 1932 one of the officers of the Gulf States Creosoting Company sent a telegram to the Merchants' Bank & Trust Company, the depository named in the contract, instructing it not to accept any further rental offered by the Gulf States Creosoting Company, which telegram was followed by a letter dated March 9, 1932, stating the reason for sending the telegram.

It was stated in testimony that the check above mentioned was dated March 15, and was received by the Merchants' Bank & Trust Company on March 17, 1932, and was held by that depository awaiting instructions from

the Gulf States Creosoting Company until April 3, 1932, when it returned the check to the senders, who, in turn, mailed it direct to the Gulf States Creosoting Company asking for instructions as to how future payments should be made. Said check was retained by the Gulf States Creosoting Company, but was not cashed or placed in a bank, ignoring the letter sent therewith, and some weeks later the Atlantic Oil Producing Company addressed a second letter calling attention to said check, and requesting a, receipt and instructions, which last letter was also ignored; but later, in the early part of the fall of that year, demand was made by the Gulf States Creosoting Company upon the appellees for the surrender of the lease which was refused.

Prior to March 12, 1933, cash was tendered to the Merchants' Bank & Trust Company and was refused.

It is a familiar rule of construction that contracts must be construed most strongly against the maker or grantor in favor of the payee or grantee.

The Gulf States Creosoting Company, who executed the lease, did not fix therein a specific day in March upon which the rental should be paid. It had the power to do this, and if it delivered the contract without having filled in that date, the contract must be construed favorably to the lessee. We think the lessee had the right to pay any day in March.

It is argued that the parties, by their act, gave the contract the construction which would make the rental payable on the date the contract was dated, to-wit, March 12th. There is nothing to sustain this argument. The two prior payments which were received were made in February. The contract made the Merchants' Bank & Trust Company a depository for the lessor for the receipt of the money, and this was to be done no matter what the parties thereto desired. It was not permissible for the Gulf States Creosoting Company, without the consent of all the parties, to breach this contract by in-

structing the depository not to receive money presented to it for the continuance of the lease for another year.

We further think that, when the cashier's check was sent prior to the expiration of March and was not returned, this was tantamount to an acceptance thereof. It will be noted that this being a cashier's check, the lessee was out his money from the time the check was drawn until the trial of the case.

We, therefore, think the court below was correct in holding that the lease is still in force.

Affirmed.

### On Suggestion of Error.

**Griffith, J.,** delivered the opinion of the court on suggestion of error.

When a party relies upon a time provision in a contract as being of the essence of that contract, it is no more than just that when he thus calls for strictness in adjudication he should show that he has been as definite and certain in his contract stipulations in respect to the time relied on as he is in the strictness to which he seeks to hold the other party in relation thereto. Here the party, now seeking to terminate the contract upon the strict contention that the annual payment was not made on or before the 12th day of March, produces the contract upon which it relies and which provides that the payment shall be made "on or before —— day of March," that is to say, an indefinite and uncertain day in March. And when we held in our original opinion that "the lessee had the right to pay any day in March," we simply applied the principle above stated, together with another well-established principle, that where performance is to be within a specified time the party bound has until the last moment of the last day so specified.

Suggestion of error overruled.