531 So.2d 1181 (1988)
Etta Mae KNOX, et al.
v.
SHELL WESTERN E & P, INC., et al.
No. 56567.
Supreme Court of Mississippi.
June 3, 1988.
As Corrected on Denial of Rehearing November 2, 1988.
John K. Keyes, Keyes & Rogers, Collins, Louis Alford, McComb, for appellants.
Walker L. Watters, Gerald, Brand, Watters, Cox & Hemleben, Jackson, Ernest W. Graves, Gibbes, Graves, Mullins, Bullock & Ferris, Laurel, E.O. Spencer, III, McKibben & Spencer, Jackson, for appellees.
En Banc.
HAWKINS, Presiding Justice, for the court:
Linda Faye Echols and Lewis E. Turner have appealed from a decree of the chancery court of Jefferson Davis County dismissing the complaint filed by Etta Mae Knox, deceased, and Turner against Shell Oil Company.
The issue we address on this appeal is whether the grantors in a mineral conveyance retained only a one-sixteenth non-participating royalty interest, or conveyed a one-sixteenth non-participating royalty interest. We agree with the chancellor that the interest conveyed a fifteen-sixteenths mineral interest, and reserved to the grantors only a one-sixteenth non-participating royalty interest, and affirm.

FACTS
On November 17, 1939, Thomas (Tom) Price was fee simple owner of twenty acres in Jefferson Davis County, described as the South Half of the Northwest Quarter of the Southwest Quarter (S-1/2 NW-1/4 SW-1/4) of Section Three, Township Six North, Range Seventeen West (3-6N-17W). On that date he and his wife Mollie executed a form mineral deed to C.L. Wagner, conveying unto him an undivided fifteen-sixteenths (15/16) interest in the oil and gas minerals. The instrument is on Form 0270 Rev. 3-36; a copy is made an appendix to this opinion. Prior to the execution of this instrument, the Prices on the same date executed an oil and gas lease to the same *1182 property to Charles W. Kelley. Kelley assigned the oil and as lease to Wagner on November 20, and all three instruments were filed for public record in the chancery clerk's office on December 14.
Tom died intestate in 1941, leaving as his sole heir-at-law his widow Mollie Terrell Price. On January 27, 1971, Mollie executed a general warranty deed to the twenty acres to Etta Mae Knox, which was filed for public record the same day.
There was no development under the 1939 oil and gas lease, and it expired.
On August 7, 1940, Wagner executed a mineral deed to Kelley conveying an undivided one-third interest in the oil and gas minerals on 390 acres of realty in Jefferson Davis County, which included the twenty-acre tract. This conveyance provided that the grantee would have and enjoy all bonuses, rents and royalties and other benefits in proportion to his interest. There were various conveyances of the Kelley interest unnecessary to recite. Their interest will be referred to as the Wagner interest.
In September, 1972, the Shell Oil Company acquired an oil and gas lease from the Wagner interest parties, having as their source of title the November 17, 1939, deed from the Prices to Wagner. Shell in turn assigned the lease to the Florida Gas Exploration Company (Florida).
In October, 1973, Florida obtained a drilling permit for a block of acres, which included the twenty-acre tract, and drilled a well approximately one-half mile from this tract. This well began commercial production in March, 1974.
The Florida interest was also assigned to numerous parties unnecessary to recite.
On August 3, 1982, Knox executed an oil and gas lease of the tract to Lewis E. Turner, which was filed for public record on January 18, 1983. On March 23, 1983, she assigned an overriding royalty equal to one-sixteenth of eight-eights (1/16 of 8/8) part of the oil produced under the lease.
On March 28, 1983, Knox and Turner filed a complaint in the chancery court of Jefferson Davis County seeking inter alia to have the court construe the Price deed to Wagner as a conveyance of a one-sixteenth royalty only, and cancel as clouds on their title all oil and gas leases and assignments thereof from the Wagner owners, and all subsequent minerals conveyances of the Wagner interest, insofar as they purported to convey anything more than a one-sixteenth non-participating royalty interest. The complaint also asked for an accounting. The complaint did not charge fraud, and did not ask to reform the conveyance because of mistake.
The basic question before the chancellor was whether the Price deed was a mineral deed of an undivided fifteen-sixteenths interest, or simply a one-sixteenth royalty conveyance, with no right in the grantee to execute oil and gas leases.
The record supports the chancellor's finding that the Prices were illiterate, and that Kelley, when he acquired the oil and gas leases, was acting as agent for Wagner. He found no element of either estoppel or laches. As above noted, there was no charge of fraud on the part of Wagner, and no claim was made that the instrument should be reformed because of mistake.
The chancellor found the instrument to be a mineral deed conveying an undivided fifteen-sixteenths interest in the minerals, less an undivided one-sixteenth royalty interest reserved in the grantors.
The complaint was dismissed; Knox and Wilson have appealed.[1]

LAW
The pertinent portions of the Wagner conveyance are as follows:
MINERAL DEED
The State of Mississippi, County of Jefferson Davis.

*1183 KNOW ALL MEN BY THESE PRESENTS:
That Tom Price and Millie Price, husband and wife .. . for and in consideration of the sum of Five and 00/100 Dollars, and other good and valuable considerations, cash in hand paid by C.L. Wagner .. . the receipt of which is hereby acknowledged, have granted, bargained, sold, conveyed, transferred, set over and delivered and by these presents do grant, bargain, sell, convey, transfer, set over and deliver unto said Grantee, forever, an undivided fifteen-sixteenths (15/16th) interest [emphasis added] in, to and of all oil, gas and other minerals, whether similar or dissimilar, on, in, under and that may be produced from the following described land situated in the Court of Jefferson Davis, State of Mississippi, more particularly described as follows, to-wit:
The South half of the Northwest Quarter of the Southwest Quarter (S-1/2 of NW of SW-1/4) Section Three, Township Six North, Range Seventeen West. Section 3 Township 6N Range 17 W Containing 20 acres, more or less, ... It is the intent of this instrument to convey Ten (10) Royalty acres. Together with the right of ingress and egress in, upon and over said land at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals and removing the same therefrom; together with the use of such amount of the surface of said land as is necessary or useful to produce, save, store, refine, treat, transport and remove such oil, gas and other minerals, including water, and to conduct all operations and erect and use thereon all buildings, derricks, tanks, structures, machinery and equipment as may be necessary or proper for such purpose, together with the right to lay and operate thereon pipe lines, telephone and telegraph lines, and to repair and remove from said land any of Grantee's property thereon at any time, including the right to pull and remove casing.
In respect to the undivided one-sixteenth (1/16th) part of and interest in the oil, gas and other minerals retained and reserved by the Grantor in said land, it is understood and agreed that said one-sixteenth (1/16th) interest is and shall always be a royalty [emphasis added] interest, and shall not be charged with any of the costs which the Grantee may incur in exploring, drilling, mining, developing and operating wells or mines for the production of oil, gas and other minerals; and, if the grantee or his heirs, executors, assigns or any person or concern to whom the Grantee shall give an oil and gas mining lease thereon, shall, by his or their explorations and operations, discover and produce oil, gas and other minerals the Grantor's one-sixteenth (1/16th) royalty interest above referred to shall be delivered free of cost to the Grantor at the wells or mines or to the credit of Grantor in pipe lines or storage provided by the Grantor. It is expressly understood that the Grantee shall never be required or under any covenant or obligation, either express or implied, to drill or operate on said lands or any part thereof for the discovery of or production of oil, gas and other minerals, and that all drilling operations and development for oil, gas and other minerals, before and after discovery, shall be solely at the Grantee's option and election, and that any wells or mines discovered or drilled by the Grantee may be abandoned or operated by him at any time at his election or discretion; provided that, before Grantor's royalty shall be calculated and determined, all oil, gas and other minerals used for light, heat and operations by the Grantee and any taxes against the production shall be first deducted.
Grantor further agrees that the Grantee shall have the right at any time to redeem for the Grantor or his heirs, executors and assigns, by payment, any note, deed of trust, taxes, judgments or other liens on the above described land in the event of default of payment by Grantor and be subrogated to the rights of the holder or holders thereof.
The rights and interest herein granted, created and reserved shall extend to the respective heirs, executors, administrators, *1184 successors and assigns of the parties hereto, it being agreed that the Grantor shall not be required to join in or ratify any oil or gas mining lease which the grantee may grant by virtue of his ownership hereunder and that Grantor shall be entitled to none of the bonus money therefor and to no part [emphasis added] of the delay rentals paid thereunder; it being further understood that any change of ownership of the one-sixteenth (1/16th) royalty belonging to the Grantor, whether effected by conveyance, will, partition or otherwise, shall entitle the respective owners only to their proportionate part of said royalty, and that the Grantee shall not be responsible for the payments or delivery of said royalty to any new owners unless and until he shall be furnished with the instrument of transfer or duly certified copy thereof.
This conveyance is made subject to any valid and subsisting oil, gas or other mineral lease or leases on said land, including also any mineral lease, if any, heretofore made or being contemporaneously made from Grantor or Grantee, but, for the same consideration hereinabove mentioned, Grantor has sold, transferred, assigned and conveyed and by these presents does sell, transfer, assign and convey unto Grantee, his heirs, successor and assigns, the same undivided interest (as the undivided interest hereinabove conveyed in the oil, gas and other minerals in said land) in all the rights, rentals, royalties and other benefits accruing or to accrue under said lease or leases from the above described land; to have and to hold unto Grantee, his heirs, successors and assigns.
TO HAVE AND TO HOLD the above described property, rights, interest and privileges, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Grantee, his heirs, executors, administrators and assigns forever; and I do hereby bind myself, my heirs, executors, administrators and assigns, to warrant and forever defend all and singular the said property, rights, interest and privileges unto the said Grantee, his heirs, executors, administrators and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.
WITNESS the hand of the Grantor this 17th day of Nov., 1939.
Witnesses;
 R.W. DeGraw
 W.J. Kerley
 Tom Price
 Mollie Price
The form used by Wagner is not a familiar form. We do not know how often it was used in 1939, but the parties have cited no reported decisions of this Court interpreting the provisions of a mineral deed on this form.
The central question in this case is who had the right to execute oil and gas leases following the execution of the instrument, the grantee Wagner or the Price grantors. We recently had to answer the same question, albeit on a different form in Thornhill v. System Fuels, Inc., 523 So.2d 983 (Miss. 1988).
There really can be no question but that the instrument clearly and specifically conveyed unto the grantee Wagner an undivided fifteen-sixteenths interest in all the oil and gas minerals with the right to explore for oil and gas. The grantor reserved only a one-sixteenth (1/16) royalty interest in the oil and gas produced, and specifically stated that the grantor would not be required to join or ratify any oil and gas lease, and would not be entitled to any bonuses or delay rentals from any oil and gas lease.
The only ambiguity in this instrument, if any, pertains to the one-sixteenth interest which was not conveyed. The chancellor held this to be a full one-sixteenth royalty interest with the right of the grantor to receive absolutely a full one-sixteenth royalty on all of the oil and gas produced. This is how the parties had treated the instrument, and this was in favor of the grantor.[2] There is no ambiguity whatever *1185 in this instrument vis-a-vis the grantors and grantee as to the executive right. The grantee acquired this complete right by the clear and unequivocal terms of the deed.
To argue otherwise from the terms of this deed is a vain exercise.
The appellants contend, however, that under our holding in Clark v. Carter, 351 So.2d 1333 (Miss. 1977), this instrument should be construed as a conveyance of a one-sixteenth non-participating royalty interest only.
Clark v. Carter is another instance where this Court, as in Harris v. Griffith, 210 So.2d 629 (Miss. 1968), overruled in part in Thornhill v. System Fuels, Inc., supra, on a very special set of facts, interpreted what otherwise would have been construed a mineral deed as a royalty conveyance only. That case, however, is distinguishable.
In Clark v. Carter, Will and Dolly Carter, she being illiterate, on June 26, 1944, executed an oil and gas lease to W.T. Rowell. On the same day they executed a Form R-101 mineral deed to Rowell conveying all their mineral interest in the same realty. In a suit to construe the instrument, the chancellor held only the Carters' royalty interest was conveyed, and that they retained all rights to execute oil and gas leases, and receive bonuses and delay rentals therefrom.
We affirmed. To us, with no explanation for having done so in the record, it was superfluous to simultaneously execute to the same leasee and grantee an oil and gas lease and a conveyance of all the minerals. Rowell owned the minerals, so why have the Carters executed an oil and gas lease? In our view, the parties must have intended that Rowell obtain only the Carters' entire royalty interest, but the Carters retain all other incidents of ownership. As we have held in Westbrook v. Ball, 222 Miss. 788, 77 So.2d 274 (1955); Mounger v. Pittman, 235 Miss. 85, 108 So.2d 565 (1959); and Thornhill v. System Fuels, Inc., supra, the incidents of ownership of minerals can be conveyed separately or together.
While the conveyance in each case was on separate forms, the distinguishing factor to us between the two cases is that in Clark v. Carter, supra, under the precise terms of the instruments the Carters had no mineral interest whatever, and this Court did not believe the parties contemplated this result. In this case, the Prices clearly retained a full one-sixteenth royalty interest. We see no reason to apply the holding of Clark v. Carter, under very exceptional circumstances, to this case.
The decree of the chancery court will be affirmed.
AFFIRMED.
HAWKINS, P.J., and PRATHER, SULLIVAN and ANDERSON, JJ., concur.
ROBERTSON, J., concurs with written opinion.
DAN M. LEE, P.J., ROY NOBLE LEE, C.J., and GRIFFIN and ZUCCARO, JJ., dissent.
*1186 
*1187 
*1188 
*1189 ROBERTSON, Justice, concurring:
This is another case where oil and gas people have refused to speak in plain English, or even plain legalese, opening the door for a title buster to turn a simple conveyance into a costly lawsuit, which in turn has caused no small brouhaha within this Court. The issue is whether on November 17, 1939, the Prices retained any leasing power such that the title buster[1] who took a lease from their successors in interest owns a share of production from a gas well on the property. The Mineral Deed they gave that day said the Prices retained a one-sixteenth interest and that this interest "is and shall always be a royalty interest" and at other points labeled what the Grantor Prices had left "the one-sixteenth (1/16th) royalty interest." Appellants would have us ignore this clear wording.
To be sure, the granting clause conveys only "an undivided fifteen-sixteenths (15/16ths) interest in, to and of all oil, gas and other minerals ... on, in, under and that may be produced... ." And my colleagues in dissent seize upon the point. The instrument nowhere says expressly that the other incidents of mineral ownership of this 1/16th interest move to grantee.[2] Yet I find it indisputable that this interest did so move when the entire instrument of conveyance is afforded the best and most coherent reading it may be given.[3] First, labeling what grantors reserved royalty rather strongly implies a conveyance to grantee of all other incidents of mineral ownership of the 1/16th part. Doubt is removed by the instrument's substantive explication of what grantors retained. Their interest is not to be charged with costs of exploration or production. Grantors have no obligation to drill or operate, those matters being grantee's responsibility to be exercised at his sole election. Importantly, "Grantor shall not be required to join in or ratify any oil or gas mining lease."[4]
The instrument then explains the monetary effect of grantors' reservation. The Prices are entitled to no "bonus money" or "delay rentals", only royalty. Of the important incidents of mineral ownership over and above royalty, grantors kept none. If 1/16th royalty is all grantors retained, and if there are only two parties to the conveyance, it follows that, subject to grantors' 1/16th royalty, all incidents of mineral ownership were conveyed to grantee.
A typed sentence found in the deed provides the clincher. That sentence reads: "It is the intent of this instrument to convey Ten (10) Royalty acres." In the present context, ten royalty acres  half the royalty on the property  "is equivalent to" the one-sixteenth royalty otherwise reserved to the Prices, though those unlettered in oil and gas lingo might find the form of expression a bit odd. This typed-in intent clause clarifies the interest conveyed as royalty of one-sixteenth of the whole (1/2 X 1/8 X 20 = 10 royalty acres).[5] Thus, the *1190 printed retention clause says the Prices keep 1/16th, or ten royalty acres, or one-half the royalty on twenty acres, while the typed-in intention clause says grantee gets the other half of that royalty. This is all that need be said to decide this case.[6]
Appellants would have us believe that the typed-in intention clause, first, is inconsistent (which it is not), and, second, no matter how vague and general, always controls over a printed instrument of conveyance, no matter how detailed and specific. We have precedent to the contrary. In Texas Gulf Producing Co. v. Griffith, 218 Miss. 141, 65 So.2d 834 (1953), the Court held the conveyance one of royalty only, despite a typed-in intention clause reference to "twenty-four mineral acres". Ford v. Jones, 226 Miss. 716, 85 So.2d 215 (1956) held that a typed-in royalty intention clause did not change a printed mineral deed form to a royalty deed. As the intention clause is not inconsistent, we need not press the point.
Much is made of the fact that the Prices were illiterate. We thought this one through in Thornhill. If illiteracy renders one incompetent, we should say so forthrightly and hold such persons without legal power to alienate their property. Past that threshold, once we hold Mollie and Tom Price competent and their conveyance valid and effective, no sensible reason may be found why their writing should be read other than as it reads. If we believe Wagner and Kelly practiced "oil sharkery", we should void the conveyance on grounds of fraud and the like. We only appear foolish when, employing the so-called rule of construction offered by the dissent, we make words mean something their combination does not mean.
I concur in today's decision, affirming as it does the final judgment of the Chancery Court of Jefferson Davis County, which in turn thwarted Lewis Turner's efforts to bust Shell Western's title.
PRATHER, J., joins in this opinion.
DAN M. LEE, Presiding Justice, dissenting:
It seems that once again  and all too soon  I must utter a dissent in an oil and gas matter. I have uttered at length my dissent to the majority's ill-founded trend in construing mineral and royalty conveyances. Thornhill v. System Fuels, Inc., 523 So.2d 983 (1988) At the risk of seeming irascible about this topic, in the dawn of the repercussions of Thornhill I feel compelled to endeavor to provide a more enlightened perspective of the unfortunate results of Thornhill and the case sub judice. Albeit possibly redundant, this is an attempt to cut "title busters and oil sharks" off at the pass and stablize the titles of those "unsuspecting people unversed in the legal niceties of theories and terminology."

FACTS
Only so much of the facts as surrounds the initial conveyance of the royalty and minerals in question will be recited here. The subsequent conveyances of the interests are concisely set out by the majority opinion.
Tom Price and his wife, Mollie, owned in fee simple twenty (20) acres of land in Jefferson Davis County. Tom and Mollie Price were Black, uneducated, and illiterate; neither of them could read or write. They earned their livelihood farming their 20 acres.
On November 17, 1939, C.C. Wagoner, a geologist, and Charles W. Kelley, his agent, both experienced in the oil and gas business, acquired from the Prices an Oil, Gas and Mineral Lease, together with an instrument entitled "Mineral Deed" on the *1191 20 acres. The oil and gas lease was acquired in Kelley's name and subsequently assigned to Wagoner. The "Mineral Deed" was acquried in Wagoner's name. The "Mineral Deed" was on a printed form in which the granting clause purported to convey an undivided fifteen-sixteenths (15/16) of the oil, gas and minerals in, on, and under the land, together with all the incidents to mineral ownership. The printed form also purported to preserve to the grantors a one-sixteenth (1/16) non-participating royalty interest, with no leasing rights reserved to the grantors. However, written on the face of the printed form, in handwriting other than that of either Tom or Mollie Price, is the language:
It is the intent of this instrument to convey ten (10) royalty acres.
On November 20, 1939, the oil and gas lease acquired by Kelley from the Prices was assigned to Wagoner; on the same date, the oil and gas lease, the "Mineral Deed," and the assignment of the oil and gas lease were all contemporaneously notarized and filed for record in Jefferson Davis County.
The basic question before the chancellor was whether the Prices' deed was a mineral deed of an undivided 15/16 interest, or a 1/16 royalty conveyance with no right in the grantees to execute oil and gas leases. More precisely, however, the issue is what effect the written-in clause, "it is the intent of this instrument to convey ten royalty acres," has on the printed form. Did the Prices convey a mineral interest or a royalty interest? Did Wagoner buy a mineral interest or a royalty interest? The chancellor found and the majority opinion today holds that the Prices conveyed all of their minerals and reserved only a 1/16 royalty interest. By so holding, the majority, again, as in Thornhill, supra, ignores well established principles of deed construction.

Some Basic Principles of Deed Construction ... One More Time
It is a well established principle of deed construction that when a written- or typed-in provision of an instrument cannot be reconciled with the printed provision, the written provision controls. Holifield v. Perkins, 233 Miss. 876, 880, 103 So.2d 433, 434 (1958); Ford v. Jones, 226 Miss. 716, 720, 85 So.2d 215, 217 (1956); Dale v. Case, 217 Miss. 298, 308-10, 64 So.2d 344, 346 (1953). Unfortunately, the chancellor below tried to read the written portion of the instrument to be consistent with the printed form. More unfortunately, the majority opinion accepts this reading of the instrument. However, the written portion cannot be read consistently with the printed form.
The first sentence of the printed form reads as follow:
Grantor ... has granted, bargained, sold, conveyed, transferred, set over, and delivered and by these presents does grant, bargain, sell, convey, transfer, set over and deliver unto said Grantee, forever, an undivided fifteen-sixteenths (15/16) interest in and to all oil, gas and other minerals ... on, in and under and that may be produced from the following described lands ...
The second sentence reads:
It is the intent of this instrument to convey ten (10) royalty acres.
It is impossible to reconcile a conveyance of a 15/16 mineral interest, which in a 20-acre tract is equivalent to 18.75 mineral acres, including 18.75 royalty acres, with the subsequent provision reflecting the intent of the grantor to convey ten royalty acres. Adding to the inconsistency is the third sentence:
In respect to the undivided one-sixteenth (1/16) part of an interest in the oil, gas and other minerals retained and reserved by the Grantor in said land, it is understood and agreed that said one-sixteenth (1/16) interest is and shall always be a royalty interest, and shall not be charged with any of the costs which the Grantee may incur in exploring, drilling, mining, developing, and operating wells or mines for the production of oil, gas and other minerals ...
If the 1/16 royalty reserved to the grantor is equivalent to ten royalty acres, which it is, then taking the first sentence and the second sentence together, the grantee is receiving *1192 title to 15/16 of the oil, gas and other minerals, and all of the royalty. This would be so because the first sentence carries with it a 15/16 mineral interest, including royalty, and the second sentence carries with it ten royalty acres, or its equivalent, 1/16 royalty. This interpretation conflicts entirely with the third sentence, which purports to reserve a 1/16 royalty interest. Furthermore, under this interpretation, there is a 1/16 mineral interest which the instrument does not speak to, precisely because the conveyance clause never conveys all of the minerals  it only conveys an undivided 15/16 of the minerals. The point of this exercise is that all of the provisions in the deed cannot be harmonized such that it is free from ambiguity. Therefore, the lower court erred in not construing the deed in accordance with the plain language of the written-in provision  ten royalty acres intended to be conveyed.
Another principle of deed construction is that when the terms of the deed are ambiguous, as they obviously are in this case, the terms are construed more strongly against the party preparing the deed. Clark v. Carter, 351 So.2d 1333 (Miss. 1977); Stampley v. Gilbert, 332 So.2d 61 (Miss. 1976); Globe Music Corporation v. Johnson, 226 Miss. 329, 84 So.2d 509 (1956); Love Petroleum Co. v. Atlantic Oil Producing Co., 169 Miss. 259, 152 So.2d 829 (1934); Home Mutual Fire Insurance Co. v. Pittman, 111 Miss. 420, 71 So. 739 (1916). Here, it is uncontradicted that Tom and Mollie Price were Black, uneducated, and illiterate; neither could read nor write. It is likewise uncontradicted that Wagoner and Kelley, both experienced oil and gas men, prepared both the deed in question and the contemporaneously executed mineral lease. If we construe this instrument more strongly against Wagoner, as we are bound to do under our precedent, we can only conclude that Wagoner, an experienced oil and gas person, knew the effect of the inserted clause. The effect was to create a royalty deed. Wagoner knew what he wanted to buy and knew the difference between minerals and royalty. This principle of instrument construction becomes crucial when a court is faced, as we are here, with grantors who were Black and who could neither read nor write. Again, to construe the deed as the majority does not only flies in the face of the expressed written intention of the grantors, but also ignores the principle of deed construction, universally accepted, that ambiguous instruments are construed more strongly against the preparer. Furthermore, such an interpretation does not begin to reconcile the ambiguity inherent in the instrument.
Finally, we have in this case, as we did in Clark v. Carter, 351 So.2d 1333 (Miss. 1977), a situation wherein the grantors contemporaneously executed a mineral lease to the very same grantee, Wagoner, albeit via Wagoner's agent, Kelley. The lower court adjudicated that Wagoner and Kelley were acting together, as evidenced by the fact that Kelley assigned the lease to Wagoner the next day and that all of these instruments were recorded at the same time. As we stated in Clark, where there is an ambiguity in the terms of a deed, the circumstances surrounding the conveyance become pertinent in determining the intent of the parties. Clark v. Carter, 351 So.2d at 1335. If, here, the intent of the parties had been to buy and sell all the minerals, the lease as to these minerals would be superfluous because the executive rights to the minerals necessarily would go the grantees, executive rights being appurtenant to mineral ownership. Id. The fact that the mineral lease was acquired from the Prices is one more factor by which to determine the intent of the Prices  to convey only ten royalty acres.
Another circumstance which becomes pertinent is that the grantee treated the interest as a royalty interest in his application for ad valorem tax exemptions in 1940. In the application, the grantee computed his interest as ten royalty acres, or a 1/16 royalty interest. Thus, the objective circumstances surrounding this deed point strongly to the conclusion that it conveyed only a royalty interest, especially when considered in light of the fact that Wagoner and Kelley, experienced oil and gas men, *1193 prepared the conveyance and obtained its execution from illiterate grantors.
All of which leads me to the majority's treatment of Clark v. Carter. The majority seeks to limit the holding in Clark to its "very exception circumstances." However, the majority does not explain why the circumstances in Clark are so "very exceptional." Even a cursory reading of Clark shows that this Court relied on our familiar principles of deed construction to find that the conveyance in that case was of royalty, not minerals. That case is no aberration from our well established principles of oil and gas law and deed construction. See, e.g., Stampley v. Gilbert, 332 So.2d 61 (Miss. 1976); Globe Music Corp. v. Johnson, 226 Miss. 329, 84 So.2d 509 (1956); Richardson v. Moore, 198 Miss. 741, 22 So.2d 494 (1945); Sumter Lumber Co. v. Skipper, 183 Miss. 595, 184 So. 296 (1938); Love Petroleum Co. v. Atlantic Oil Producing Co., 169 Miss. 259, 152 So. 829 (1934); Home Mutual Fire Insurance Co. v. Pittman, 111 Miss. 420, 71 So. 739 (1916). See also my dissent in Thornhill, supra, where I expounded at length about why Harris v. Griffith, 210 So.2d 629 (Miss. 1968), was no aberration in our case law and should not be overruled. To a great extent, the same reasons apply to what the majority does to Clark today.

CONCLUSION
I reiterate what I said in Thornhill, that the ramifications of this decision will have troublesome effects upon Mississippi's oil and gas law, not to mention the incredible injustice we do to the grantors in this case. (And I ain't just a'whistling `Dixie.') I would hold that the deed from the Prices to Wagoner conveyed a royalty interest and reverse the chancellor below.
ROY NOBLE LEE, C.J., and GRIFFIN and ZUCCARO, JJ., join in this dissent.
NOTES
[1] Knox died just prior to the chancery court decision, and her cause was revived in the name of her adopted daughter Linda Faye Echols.
[2] If the grantee had reserved only an undivided one-sixteenth mineral interest, as opposed to a one-sixteenth royalty interest, it might be argued that the grantor would only be entitled to receive one-eighth of one-sixteenth of the oil and gas produced, a result the parties expressly excluded.
[1] "Title buster" has acquired pejorative connotation in this case. I know of no rule or policy in our law that would or ought condemn one who seeks and finds unacquired interests incident to a producing well. The lessors of such unacquired interests just might be poor illiterates who would have nothing in the face of a producing well on property in which they have rights, were it not for the cunning of the title buster.
[2] The conveyance is made via Mineral Deed Form 6276-Rev. 3-36, printed by Hederman Bros. of Jackson, Mississippi. This form is not in common use today, though we see it from time to time. See Bourn v. Tomlinson Interest, Inc., 456 So.2d 747, 748 (Miss. 1984). On several counts the wording is so bad I would have the draftsman resurrected and flogged.
[3] See my separate opinion concurring in Thornhill v. System Fuels, Inc., 523 So.2d 983, 1003 (Miss. 1988).
[4] True, it would have been better if the deed read "Grantor shall have no power or authority to join in or ratify... ."
[5] In the dissent we find "If the 1/16 royalty reserved to the grantor is equivalent to ten royalty acres, which it is, ...." (Emphasis supplied). And then "ten royalty acres, or its equivalent, 1/16 royalty." In Payne v. Campbell, 250 Miss. 227, 164 So.2d 780 (1964), a royalty acre is recognized and defined as a one-eighth royalty on one acre of land. The subject deed conveyed the minerals in a twenty acre tract and the grantors, Tom and Mollie Price, reserved a one-sixteenth royalty interest. A one-sixteenth royalty interest in a twenty acre tract is, of course, equivalent to a one-eighth royalty in a ten acre tract or ten royalty acres.
[6] My target today is the use of phrases such as "____ royalty acres" or "____ mineral acres". Of course, well known and understood customs and usages of a trade  including forms of expression  ought be judicially respected (even when not the best way to put a point). And here in the end the ten royalty acres typed-in intention clause saves the day. My point is that this clause, coupled with a hopefully now extinct pre-printed mineral deed form, are what caused the lawsuit in the first place. Oil and gas law is nothing more than property law and its forms of expression should shun the obscure and the occult, as some oil and gas lawyers would do well to shed their tunnel vision and proceed.