BLANKS *v.* SADKA

No. 41938          October 2, 1961          133 So. 2d 291

*Holyfield & Goldman,* Meridian, for appellant.

*Dunn* & *Singley,* Meridian, for appellee.

JONES, J.

After complainant had introduced his proof on a bill in chancery charging fraud and deceit and seeking to recover a monetary judgment, defendant moved to exclude the evidence and dismiss the bill. The chancellor sustained the motion.

On this appeal we are first confronted with this fact: The rule is well settled that when at the conclusion of the complainant's evidence the defendant moves to exclude the evidence and dismiss the bill, the court should assume as true all facts which the complainant's evidence fairly tends to establish, together with all reasonable inferences to be deduced therefrom. Griffith's Mississippi Chancery Practice (2d ed.), Sec. 584; Partee v. Pepple, 197 Miss. 486, 20 So. 2d 73; Skrmetta v. Moore, 202 Miss. 585, 30 So. 2d 53; United States Realty Sales v. Kuhn, 206 Miss. 123, 39 So. 2d 776; Bethea v. Mullins, 226 Miss. 795, 85 So. 2d 452.

Complainant's evidence fairly tended to prove that he was the owner of 120 acres of land which he desired to sell; that he had verbally listed it with a realtor in the latter part of 1958; that about December 1958, appellee, who was a real estate broker of approximately twelve years' experience, called complainant, desiring to list complainant's land, but complainant declined to list with him until the other broker failed. Later, complainant notified appellee he could list the land if he desired. On January 29, 1959, complainant signed a paper called "Option", a printed form, which appellee presented for his signature. The form as printed was purely an option and gave appellee or his assigns the right within sixty days to purchase the property for $9,-000. However, appellee, with pen and ink, interlined on said printed form these words: "Owner will pay Sadka Realty Co. 5% of $9,000 at time of sale."

Sadka Realty Company was appellee's trade name, and the instrument was made to Sadka Realty Company. The sixty days provided by the instrument expired but the agreement was extended verbally. Appellee was unable to procure the original price of $75.00 per acre, so complainant told him to reduce the price but not below $50.00 per acre, and he was assured that he would receive every penny that appellee secured between $75.00 and $50.00 an acre. Complainant's sister, Mrs. H. C. Parker, finally talked to appellee and told him she thought her brother would take less than $75.00 an acre, and she was assured that appellee would get as much as he could for the land for the benefit of both parties. Appellee told her, "The more I get, the more my commission will be."

Almost immediately thereafter the 120 acres was advertised in the Meridian paper for $60.00 per acre, with the word "exclusive" in the ad. The ad was over the signature of "Sadka Realty Co., Licensed Real Estate Brokers." The paper was dated April 19, 1959. On the

morning of April 20, 1959, appellee was contacted by W. L. Price as a prospective purchaser. Appellee showed the property to Price early that morning, and on that same morning, after seeing Price, he went to see complainant, and represented to him that $50.00 per acre, or $6,000, was all he could secure for the property; that his commission would be $300, and leave complainant $5,700.

Appellee presented to complainant a paper which he understood to be a listing for $6,000, less five percent commission. Mr. Price testified appellee told him that before he could buy it he would have to get complainant to sign something. Complainant did not read the paper of April 20, 1959, but relied on appellee's statements. It developed this instrument was a direct option to appellee for $5,700. On that same day, appellee entered into a written contract with Price for $7,200. When the deal was closed, complainant was not advised of the price paid, but understood it was $6,000; he did not receive the $5,700 as per the option, but there was deducted therefrom $75.00 for a title certificate, netting complainant $5,625, while appellee received $1500 rather than five percent of $7,200.

The learned chancellor found there was no evidence establishing or tending to establish a confidential or fiduciary relationship. The chancellor held that complainant's testimony dispelled any charge of confidential relationship. We do not so understand. Complainant testified at one place that he was to pay five percent for selling. At another place, he said it wasn't thoroughly understood whether the five percent came over and above the $9,000, or whether he was to pay him the five percent. The instrument itself is clear and states that "the owner" is to pay.

The instrument of January 29, 1959 created the appellee an agent to sell for which he would receive a commission of five percent. Partee v. Pepple, et al.,

197 Miss. 286, 20 So. 2d 73. ██ ██ The expiration date was waived by parol. Partee v. Pepple, supra.

██ ██ A real estate agent is a special agent of limited powers. Shemper v. Latter & Blum, Inc., 214 Miss. 113, 58 So. 2d 359. In 12 C.J.S., Brokers, Sec. 6, page 11, it is said: "In so far, however, as he is employed, in the course of the transaction, to act as agent for one of the parties, his relationship with such party or customer is essentially fiduciary and confidential in character, as in the case of a stockbroker, or where a real estate broker is employed to purchase or sell property for his customer."

██ ██ Appellee's relation with complainant was that of a fiduciary requiring full disclosures, frankness and honesty in the dealings between them. When the instrument of April 20, 1959 was presented to complainant, he had the right to assume appellee was dealing fairly with him.

Some of the Judges here would favor reversal and judgment here for complainant, but we are precluded therefrom and can only reverse and remand for another trial.

Reversed and remanded.

*Lee, P.J.,* and *Kyle, Gillespie* and *McElroy, JJ.,* concur.