332 So.2d 61 (1976)
J.L. STAMPLEY, Executor of the Estate of Mrs. Gladys Gallagher Stampley, Deceased
v.
Joe E. GILBERT et al.
No. 48655.
Supreme Court of Mississippi.
May 11, 1976.
Thomas K. Holyfield, Meridian, for appellant.
Singley, Minniece, Hamilton, Neville & Hamill, Meridian, for appellees.
Before GILLESPIE, ROBERTSON and LEE, JJ.
ROBERTSON, Justice, for the Court:
J.L. Stampley, Executor of the estate of his deceased mother, Mrs. Gladys M. Gallagher Stampley, with court approval, brought suit in the Chancercy Court of Lauderdale County to remove as a cloud on the title of his mother's home in Meridian, Mississippi, a written lease to Joe E. Gilbert, his wife, Mrs. Dorcas L. Gilbert, and his mother-in-law, Mrs. Ethel Humphrey.
When the complainant rested, the court sustained a motion to exclude the evidence and to dismiss the bill of complaint, thus holding in effect that the defendants had a right to perpetually renew the lease.
The original lease was entered into on February 12, 1971, between Mrs. J.R. Stampley, as lessor, and the Gilberts and Mrs. Ethel Humphrey, as lessees, at a time when Mrs. Stampley was in the Gatlin Nursing Home as a patient because she was mentally disturbed and could not look after herself physically.
When Joe Gilbert approached J.L. Stampley about renting his mother's home for $50 a month, he was advised by J.L. Stampley that his mother was in the nursing home, in no condition to negotiate a lease or to even discuss the matter. Thereafter Joe Gilbert carried on all the negotiations with J.L. Stampley. When it appeared that Gilbert and Stampley had agreed on the terms of a one-year lease, Gilbert had his lawyer draw up the lease contract and he delivered the lease to J.L. Stampley.
J.L. Stampley, without reading the lease, took it to his mother in the nursing home, told her she was renting her home for one year at $50 per month and advised her to sign it.
When asked if he read the lease to her, Stampley answered: "No, sir, because it wouldn't do any good. She wouldn't understand it if you read it to her." At her son's instance, she signed the lease and *62 Robert J. Stampley, another son, stopped by the nursing home and signed as a witness.
The lease contained these provisions:
"2. It is understood and agreed that the above described real property is a residence located at 513  29th Avenue and that Lessor reserves and excepts from the operation and effect of this indenture of lease the small apartment consisting of two rooms and a bath located in the south part of said residence for as long as Lessor uses said apartment for her personal convenience. It is further understood and agreed that when Lessor no longer uses said apartment it shall revert to lessees under the same terms and conditions herein contained.
"3. The original term of this lease shall begin at 12:01 A.M. on March 1, 1971 and end at midnight on the last day of February, 1972. For the same consideration, Lessor agrees that Lessees shall have the option to renew said lease and extend the term thereof for an additional term of one year on the anniversary hereof and if so renewed and extended, Lessees shall have the same said option on every anniversary thereafter.
"4. The rental is hereby stipulated and agreed to be $600.00 per year for the primary term and for such options as are exercised thereafter payable by Lessees to Lessor in twelve monthly intallments of $50.00 each on or by the 5th day of each month.
"5. It is understood and agreed that Lessor or her heirs and assigns shall pay for all major repairs, taxes, insurance and any and all assessments made by the City or County on the property herein described and it is further understood and agreed that Lessees shall make all minor repairs except that said Lessees shall not be required to expend in excess of $15.00 for said repairs in any one month. It is also understood and agreed that the current appraisal value of the lease premses is $5,800.00."
The lease was renewed for one year on February 19, 1972. When Gilbert attempted to renew the lease for another year in February, 1973, J.L. Stampley was advised by Gilbert that he had a right to a perpetual renewal of the lease. Stampley refused to have his mother sign the second renewal because there had never been any discussion nor any agreement about a right to perpetually renew. All Stampley had ever told his mother and all she ever understood was that she was renting her home for one year, and that she was renewing the lease for one more year.
On June 28, 1973, J.L. Stampley was appointed Conservator of the person and property of his mother, Mrs. J.R. Stampley, the Chancellor finding in his decree that "Mrs. J.R. Stampley is physically and mentally incapacitated to look after her person and estate."
After Mrs. Stampley's death on August 10, 1973, Gilbert probated an itemized claim for repairs to Mrs. Stampley's home in the total sum of $1,967.18 against both the conservatorship and her estate. As authority for this claim, Gilbert attached to it a copy of the February 12, 1971, lease. Under paragraph 5 of the original lease, in addition to paying for all major repairs, Mrs. Stampley obligated herself, as lessor, to pay all "taxes, insurance and any and all assessments made by the City or County on the property".
1971 taxes, with homestead exemption, amounted to $87.00; 1972 taxes to $91.50; and 1973 taxes to $92.00. Mrs. Stampley also paid $46.00 insurance premiums each year. Under the terms of the February 12, 1971, lease, Mrs. Stampley received $50 per month rent or a total of $600 for the year.
The testimony is uncontradicted that Mrs. Stampley, at the time she was placed in the Gatlin Nursing Home in October, 1970, was physically and mentally impaired, *63 was mentally confused and could not look after her physical needs. J.L. Stampley, her son, Mrs. J.L. Stampley, her daughter-in-law, Robert J. Stampley, another son, Mrs. W.S. Hust, an older sister, and Mrs. Ethel Jenkins, an old friend, all testified to this. Mrs. Virgie P. Gatlin, the owner and operator of the nursing home, testified that she could not be trusted with her medicine, that she would take a whole bottle of Bufferin at one time and even take too much of her prescription medicine. Mrs. Gatlin, who observed her closely and constantly all the time, was firmly of the opinion that she was mentally incompetent and irresponsible, and not able to understand or transact any business the entire time she was in the nursing home.
Dr. Mayo Flynt, Mrs. Stampley's doctor since 1964, testified that she had a chronic kidney disease, a chronic lung disease, and chronic arteriosclerotic heart disease when he treated her in Riley's Hospital from August 7th to August 21st, 1970; that these diseases were progressive and affected her mental processes. When asked about her condition, Dr. Flynt responded: "Well, she was very mentally confused."
On redirect examination these questions were asked and Dr. Flynt answered:
"Q Doctor, why was the lady placed in the nursing home?
A She wasn't able to look after herself.
Q And why wasn't she able to look after herself?
A Because she was chronically ill.
Q Was her condition progressive?
A Yes, sir.
Q And there was no hope for it to improve?
A It was our opinion there was not.
Q And the fact is it did not, did it?
A No, sir.
Q If it's progressive, then what happens?
A Well, she died.
Q She dies; and her symptoms become more acute as time passes; is that correct?
A Yes, sir."
The testimony is overwhelming, in fact it is uncontradicted, that Mrs. Gladys M. Stampley (Mrs. J.R. Stampley) was in no mental condition to understand the terms of the lease entered into by her in February, 1971. She was a very sick woman, both mentally and physically. It is certainly clear and obvious that she did not intend to enter into a perpetual lease of her only home.
There is also the universal rule of construction that when the terms of a contract are vague or ambiguous, they are always construed more strongly against the party preparing it. Globe Music Corp. v. Johnson, 226 Miss. 329, 84 So.2d 509 (1956); Love Petroleum Co. v. Atlantic Oil Producing Co., 169 Miss. 259, 152 So. 829 (1934). In this case the lease was prepared by Mr. Gilbert's lawyer at Gilbert's instance.
Although this Court upheld the renewal terms of a standard oil and gas lease in Lloyd's Estate v. Mullen Tractor & Equipment Co., 192 Miss. 62, 4 So.2d 282 (1941), we did state the attitude of the law as to perpetual leases in these words:
"It is true that the law does not favor perpetual leases and that the intention to give the right to perpetual renewals must appear in clear and unequivocal language, and that a lease will not be construed to create such a right unless the language employed clearly and unambiguously indicates that it was the intention and purpose of the parties to do so; ... ." 192 Miss. at 76-77, 4 So.2d at 285. (Emphasis added).
*64 The intention to give the right to perpetual renewals certainly does not appear in clear and unequivocal language in the original lease, prepared by Gilbert's attorney and submitted to Mrs. Stampley for her signature while she was in the nursing home.
In Blanks v. Sadka, 241 Miss. 821, 133 So.2d 291 (1961), this Court said:
"The rule is well settled that when at the conclusion of the complainant's evidence the defendant moves to exclude the evidence and dismiss the bill, the court should assume as true all facts which the complainant's evidence fairly tends to establish, together with all reasonable inferences to be deduced therefrom. [Citing numerous authorities]." 241 Miss. at 823, 133 So.2d at 292.
The chancellor did not observe this well-nigh universal rule in the case at bar. He erred when he sustained the motion to exclude the evidence and to dismiss the bill of complaint. The decree is reversed and this cause remanded for a new trial.
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.