**RANDAL CRAFT REALTY COMPANY, INC., Plaintiff-Appellee,**

**v.**

**UNIJAX, INC., Defendant-Appellant,**

**v.**

**Maurice JOSEPH, Defendant-Appellee.**

No. 80–3593.

United States Court of Appeals, Fifth Circuit. Unit A

Aug. 21, 1981.

W. McDonald Nichols, Natie P. Caraway, Jackson, Miss., for Unijax, Inc.

Frank T. Moore, Jr., Jackson, Miss., for Randal Craft Realty Co., Inc.

Perry, Crockett, Morrison & Starling, Tommy E. Furby, Jackson, Miss., for Maurice Joseph.

Before CHARLES CLARK and RANDALL, Circuit Judges and SHARP *, District Judge.

CHARLES CLARK, Circuit Judge.

This Mississippi diversity case presents a brokerage commission dispute between two real estate brokers, Maurice H. Joseph and Randal Craft Realty Company, and their principal, Unijax, Inc. The district court held that both Joseph and Craft were entitled to recover a commission from Unijax for the same land transaction. Unijax appeals, claiming that both brokers breached the fiduciary duty of loyalty owed by an agent to its principal and that the district court erred in awarding prejudgment interest to Craft and Joseph. We affirm the judgment of the district court awarding a commission to both brokers, reverse the award of prejudgment interest to Craft, and vacate and remand the award of interest to Joseph.

Unijax held a leasehold interest in a warehouse and the four and one-half acres on which it was situated in Jackson, Mississippi. On March 31, 1978, Unijax and Joseph entered into a brokerage contract covering Unijax's warehouse property. According to the terms of the contract, Unijax granted Joseph the exclusive right to sell Unijax's interest in the property and agreed to pay a commission of 6% of the purchase price if the leasehold were assigned under terms and conditions that were acceptable to Unijax. The contract provided that the exclusive right to sell extended for a period of ninety days and would continue indefinitely thereafter until either party gave thirty days written notice of its intention to terminate the agreement. In addition, Unijax agreed to pay Joseph the 6% brokerage commission if within sixty days after termination it sold or exchanged the property to a prospective buyer on whose behalf Joseph had submitted a written notice of showing to Unijax. After about a year had elapsed and Joseph had failed to come forward with a prospective assignee, Unijax invoked the termination clause and cancelled the agreement effective April 27, 1979. Joseph submitted a list of prospects claimed to be covered by the sixty-day proviso.

On April 16, 1979, Unijax executed another exclusive right to sell agreement covering the same property with a second broker, Randal Craft Realty Company (Craft). The

---

* District Judge of the Northern District of Indiana, sitting by designation.

Craft agreement became effective April 30, 1979, and its substantive provisions are virtually identical to those contained in the earlier contract with Joseph. However, the Craft agreement included a provision expressly reserving to Unijax the right to sell or lease the covered premises without commission during Joseph's sixty-day protected period to those prospects specifically identified in an appendix attached to the contract.

On the last day of Joseph's sixty-day protected period, June 26, 1979, Joseph submitted a $700,000 offer to Unijax from Cochran/Sysco, one of the companies included on the list of protected prospects appended to the Craft contract. That same day, Robert Doney, a Unijax representative, talked by telephone to Joseph and his agent, Ted Orkin. Doney told Orkin that Unijax required an offer of $750,000 and that the form of the offer needed to be recast to reflect Unijax's assignment of its leasehold interest rather than a sale of the fee simple interest. He also requested Orkin to inform Craft of the continuing negotiations with Cochran/Sysco and to obtain a letter from Craft disclaiming any right to a commission for a sale to Cochran/Sysco. Orkin agreed only to take the matter up with Joseph, and later during the same conversation Joseph himself told Doney that he believed that he was entitled to the full commission since the offer had been submitted during his protected period. Joseph also said that Unijax would have to work out its obligations to Craft alone. Neither Joseph nor Orkin ever contacted Craft about the ongoing negotiations with Cochran/Sysco.

For the next several weeks, Unijax continued discussions with Cochran/Sysco, using Joseph as an intermediary, and Doney granted two separate extensions of time in which Cochran/Sysco could accept its revised form of agreement. The final extension expired on July 20, 1979, and on that day Unijax and Cochran/Sysco signed an agreement to pay $750,000 for an assignment of the Unijax leasehold rights. The transaction was then closed on August 31, 1979.

Meanwhile, Unijax did not inform Craft of its bargaining role with Cochran/Sysco until Craft called Doney on July 17, 1979, to say that he had located a prospective buyer but that the prospect was not yet ready to make an immediate offer. Doney told Craft that Unijax still had an outstanding offer under consideration until July 20, and Craft expressed his view that the sale would fall within the period of his exclusive right to sell. Craft told Doney that he did not want to get his prospect involved in a bidding contest for the property and that he would await the outcome of the Cochran/Sysco negotiations. When Cochran/Sysco signed the agreement on July 20, Doney notified Craft that the deal had been concluded.

Between July 20 when Unijax and Cochran/Sysco executed the agreement for assignment of leasehold and August 31 when the transaction was closed, Craft twice asserted to Unijax that it was entitled to receive payment of the commission. Doney once again told Orkin that he expected Joseph to obtain a disclaimer from Craft, and Joseph reiterated his position that he was entitled to receive the full commission. Thus, both realtors claimed the right to recover the full $45,000 brokerage commission, and Unijax refused to pay either of them.

On September 12, 1979, Craft brought this suit against Unijax in Mississippi state court, and Unijax removed the action to federal district court. Unijax answered, denying that Craft was entitled to receive the commission and claiming that Craft had lost any right to recover because it has breached its fiduciary duty to Unijax. Unijax also interpled Joseph's claim and asserted the same grounds for denying recovery. After a bench trial, the district court held that both Joseph and Craft were entitled to receive the full $45,000 brokerage commission for the Cochran/Sysco transaction.

On appeal, Unijax does not challenge the contractual right of Craft to receive a brokerage commission under the terms of its exclusive right to sell agreement, nor does it challenge Joseph's right to a commission

as the procuring agent under Joseph's agreement as modified by the subsequent dealings of the parties. Instead it argues only that both brokers breached the fiduciary duty owed by an agent to his principal and that such a breach precludes recovery.[1] It contends that Craft breached its fiduciary duty by failing to warn Unijax that it intended to assert its right to receive the brokerage commission if the warehouse property was assigned to Cochran/Sysco. Unijax further contends that Joseph breached its fiduciary duty to Unijax by refusing to notify Craft that his sixty-day protection period had expired and no contract had been signed. Neither of these contentions has any substance.

■■ All parties agree that a real estate broker is a fiduciary who holds a position of trust and confidence with respect to his principal. In all matters within the scope of his agency, the broker is required to use his best effort and skill on behalf of his principal and to exercise utmost good faith and loyalty in all their dealings with one another. Moreover, he must not put himself in a position antagonistic to the principal's interest by fraud, action adverse to his client's interests, failure to account for all funds or property belonging to the principal, or in any of several other ways. *See, e.g., Blanks v. Sadka*, 241 Miss. 821, 133 So.2d 291 (1961); *Van Zandt v. Van Zandt*, 227 Miss. 528, 86 So.2d 466 (1956). *See generally* Restatement (Second) of Agency, §§ 376–398 (1958).

To support its claim that Craft's conduct during its agency precludes recovery of the commission, Unijax asserts the agent's special duty to communicate information he possesses or acquires which may be material to his principal's advantage. *Van Zandt v. Van Zandt, supra*, endorses the following formulation of the fiduciary's obligation:

It is the prevailing rule that ... the person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff (the other party), and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act ....

227 Miss. at 539, 86 So.2d at 470 (citations omitted). Unijax insists that Craft breached this duty when it neglected to apprise Unijax of its intention to exercise its contractual right to a brokerage commission on the Cochran/Sysco transaction.

■ However, Unijax's position fundamentally misapprehends the nature of a fiduciary's duty. When a broker discovers facts which may be relevant to the affairs entrusted to him, he undoubtedly has a duty to act to protect his principal's interests or to communicate the facts discovered to his principal. But that duty imposes no obligation on the agent to inform the principal of his intention to assert his right to a commission which the contract giving rise to the agency creates. Here, Unijax well knew Craft's rights under the exclusive right to sell agreement, yet it continued to negotiate with Cochran/Sysco through Joseph rather than change agents during the middle of what were evidently critical negotiations. Even though Joseph's sixty-day protected period had expired, Unijax elected to extend its relationship with Joseph into Craft's exclusive listing period, thereby creating the unhappy predicament in which it now finds itself. Unijax could read the contract as well as Craft, and it requires no remarkable powers of prediction to anticipate that one contracting party will exercise its rights against the other.

■ Unijax's argument with respect to Joseph is no more persuasive. Unijax urges that Joseph breached its fiduciary duty

---

1. Unijax also argues that the district judge failed to consider its claim of breached fiduciary duty. This argument has no merit. Unijax had sought to establish the content of the brokers' duty by relying upon the Code of Ethics promulgated by the National Association of Realtors. The district court's memorandum opinion expressly refuses to apply it, saying that "those rules and regulations as ethical principles do not have the force and effect of law." Since the realtor's code of ethics was relevant only to the question of fiduciary duty, it is clear that the district judge was aware of the issue and that he specifically rejected it.

when it failed to tell Craft that its protection period had expired but that negotiations were still being conducted with Cochran/Sysco. However, Unijax does not cite a single case to support this novel legal theory. Unijax apparently assumes that if Joseph had contacted Craft then it would have avoided exposure to double liability, but this assumption is unwarranted. Such notice would have served only to alert Craft, a third party to whom no duty was owed, of the need to take steps to protect its rights against Unijax. It would have done nothing, however, to ameliorate the situation for which Unijax itself was responsible. Moreover, according to the testimony of both Doney and Joseph, Joseph told Doney that any communication with Craft about Joseph's continuing actions would have to come from Unijax. Accordingly, the district court properly rejected Unijax's affirmative defenses against both Craft and Joseph.

■ The district court also awarded prejudgment interest at a rate of 8% to both Craft and Joseph calculated from August 31, 1979. Craft has conceded on appeal that it is not entitled to receive prejudgment interest because it failed to make such a request in its initial pleadings or by subsequent amendment. *See, e.g., M. T. Reed Construction Co. v. Nicholas Acoustics Co.,* 379 So.2d 308, 313 (Miss.1980). Accordingly, that part of the district court's judgment awarding prejudgment interest to Craft must be reversed.

■ Furthermore, until amended on May 13, 1980, Mississippi Code § 75–17–1(1) allowed prejudgment interest at a rate of 6%. Thus, the district court's award of prejudgment interest calculated at 8% rather than 6% for the period before May 13, 1980, is also erroneous. It must be vacated and the case remanded for a proper assessment of the amount of interest properly awardable to Joseph.

AFFIRMED IN PART; REVERSED IN PART; VACATED AND REMANDED IN PART.