# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI

### NO. 2000-CA-01814-COA

**F. BAXTER LANE AND KATHRYN LANE**                                          **APPELLANTS**

**v.**

**A.J.M. OUSTALET, JR., ALFONSO REALTY, INC., AND JERRY ROSETTI, ESQUIRE**                                **APPELLEES**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 10/05/2000 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | ROBERT H. TYLER |
| ATTORNEYS FOR APPELLEES: | FRED MANNINO |
| | W. F. HOLDER II |
| | JAMES C. SIMPSON JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | DIRECTED VERDICT FOR ALL DEFENDANTS |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART- 6/4/2002 |
| MOTION FOR REHEARING FILED: | 6/18/2002; denied 11/5/2002 |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., BRIDGES, AND IRVING, JJ.

BRIDGES, J., FOR THE COURT:

¶1. The case *sub judice* concerns the purchase of residential real estate property located on the Mississippi Gulf Coast and the alleged breach of the contractual and fiduciary duties of the parties involved. The purchasers of the property, Kathryn and Baxter Lane, filed suit against the former owner of the property, the real estate agency and the closing attorney. The trial court directed a verdict in favor of the defendants. Feeling aggrieved, the Lanes perfected their appeal and ask this Court to review the directed verdict ruling of the trial court. Finding error, we reverse in part and affirm in part.

## STATEMENT OF FACTS

¶2. Appellants Kathryn and Baxter F. Lane (Buyers/the Lanes) were relocating from New York to the Mississippi Gulf Coast area in 1996. The Lanes contacted Sherry Owen (Owen) of Alfonso Realty, Inc. (Alfonso), and were shown a single-family residence that pleased them. Prior to signing a sales contract, the Lanes received a disclosure statement giving information about the home, including the fact that the home

had prior termite damage. The Lanes also agreed to have Alfonso act in a dual agent capacity, giving rise to a heightened fiduciary duty owed to both the prospective buyers and the seller to the transaction. The contract price was negotiated and the Lanes agreed to purchase the home from the seller, Mr. A. J. M. "Bubba" Oustalet (Seller/Oustalet).

¶3. The sales contract detailed specifics relating to the buyer, seller and broker. Paragraphs four and twenty-one of the contract are important to this litigation and were repeatedly referred to during the course of trial. Paragraph four of the contract specifically required the seller to furnish to the purchaser, prior to or at closing, a closing termite certificate from a licensed termite company stating that the subject property showed no evidence of termite or other wood destroying insect infestation. If such infestation existed, the contract specified that the seller shall furnish warranty of approved treatment and correct any structural damage caused by such infestation. Paragraph twenty-one specified the responsibility of the broker and attempted to limit the liability of such broker. Additionally, a special contractual provision was added at the insistence of the buyers stating that a home inspection would be conducted within five days of the signing of the contract at the expense of the Lanes.

¶4. Pursuant to Alfonso's request, Ben Watson, an Orkin Pest Control technician performed the pest inspection and completed the Mississippi Official Wood Destroying Insect Report on November 6, 1996. The report indicated that there was unrepaired termite damage and recommended that a qualified expert be consulted to determine if the damage needed repairing.

¶5. Orkin delivered the insect report directly to the closing attorney, Jerry Rosetti (Rosetti), per the normal course of business. Rosetti's fees were paid by the Lanes to ensure that Rosetti would represent their best interests. Rosetti testified that upon review of the report, his office notified Owen of the recommendation to have the property examined by a damage expert. Owen testified that she then contacted Steve Foster of Foster Construction Company to evaluate the termite damage. Owen further testified that she advised the seller, Oustalet, of the report and the need to have the house examined by a qualified contractor, but did not advise the buyers. The Lanes contend that they never received a copy of the report prior to or at closing.

¶6. The residential property closed on November 18, 1996, and the Lanes took possession of the home shortly thereafter. After closing, the Lanes contacted Terminix for pest control. Terminix, after an inspection, formulated a report, showing an area of 750 to 800 square feet of damage. By this time, the Lanes had requested and received a copy of the Orkin report from Rosetti. After reviewing the two reports, the Lanes hired two different professional contractors to offer estimates to repair the damage. Both contractors testified as experts at trial and corroborated that the home was damaged and the costs to repair were estimated over $35,000.

¶7. At the close of the Lane's case, the defense moved for a directed verdict pursuant to Rule 50 of the Mississippi Rules of Civil Procedure. The judge granted the motion and dismissed all causes of action against all defendants.

## STANDARD OF REVIEW

¶8. "On appeal, we conduct a *de novo* standard of review of motions for directed verdict. When deciding whether the granting of a motion for directed verdict was proper by the lower court, this Court considers the evidence in the light most favorable to the non-moving party and gives that party the benefit of all favorable inferences that may be reasonably drawn from the evidence presented at trial. *Houston v. York*,

755 So. 2d 495, 499 (¶ 12) (Miss. Ct. App. 2000) (citing *Sperry-New Holland, a Div. of Sperry Corp. v. Prestage*, 617 So. 2d 248, 252 (Miss. 1993)). If those facts and inferences, so viewed, can be said to create a question of fact from which reasonable minds could differ, then the matter should be submitted to the jury and the directed verdict should not be granted. *Houston*, 755 So. 2d at 499 (¶ 12) (citing *Prestage*, 617 So. 2d at 252).

## LEGAL ANALYSIS

¶9. The Lanes asserted legal theories against Oustalet for failing to furnish a closing certificate from a licensed termite company and misrepresentation. The theories against Rosetti included failing to ensure that all provisions of the contract for sale were fulfilled including the seller's duty to provide the termite certificate and breach of his fiduciary duty to disclose all significant and material information known by him. Alfonso was sued on theories of breach of the heightened fiduciary duty, including the duty to disclose, and misrepresentation.

## A. The claims against seller A. J. M. Oustalet

### 1. *Failure to furnish termite report*

¶10. One of the primary duties owed to the buyer by the seller was the delivery of the termite certificate as contemplated by paragraph four of the sales contract. The Lanes argue that they never received a copy of the report prior to or at closing as the contract dictates. Oustalet contends that delivery to the Lanes's agents Rosetti and Owen sufficed for delivery. We agree with the seller.

> Under the general law of agency, knowledge acquired by an agent when transacting his principal's business will be imputed to his principal although not communicated to him, in the absence of a limitation on the agent's authority to the contrary, known to the person with whom the agent deals.

*Pittman v. Home Indemnity Co. & Moss*, 411 So. 2d 87, 89 (Miss. 1982) (citing *Home Insurance Co. of New York v. Thornhill*, 165 Miss. 787, 796, 144 So. 861, 863 (1932)).

¶11. It is undisputed that both Rosetti and Owen were aware of the termite report. Testimony at trial revealed that Orkin delivered the report directly to the closing attorney Rosetti's office. Further testimony revealed that Rosetti studied the report and heeded the recommendation to have an expert look at the damaged property. Rosetti then called Owen, the Lanes's real estate agent, to relay such information.

¶12. As each of the Lanes's two agents testified, they were aware of the report. In accord with agency law, the Lanes were also aware of the report. The lower court was correct in granting the directed verdict on the issue of failure to present a copy of the termite report.

### 2. *Misrepresentation*

¶13. The Lanes must prove negligent misrepresentation by a preponderance of evidence. *Levens v. Campbell*, 733 So. 2d 753, 762 (¶ 40) (Miss. 1999). To prove this theory, the Lanes must show (1) a misrepresentation or omission of a fact; (2) that the representation is material or significant; (3) failure to exercise reasonable care on the part of the defendant; (4) reasonable reliance on the misrepresentation or omission; and (5) damages as a direct result of such reasonable reliance. *Id.* at 762 (¶40).

¶14. A misrepresentation argument was initially addressed at trial but was not addressed at all in the Lanes's brief to this Court. The Mississippi Supreme Court has frequently held that propositions unsupported by reasons and authority are considered to have been waived. *Thibodeaux v. State*, 652 So. 2d 153, 155 (Miss. 1995); *Dozier v. State*, 157 So. 2d 798, 799 (Miss. 1963). Furthermore, Oustalet admitted prior infestation on the disclosure statement given to the Lanes prior to signing a sales contract. Additionally, as his sworn answers indicate, Oustalet instructed Owen to "do what was necessary to have the problem corrected." Oustalet properly disclosed the prior termite problem and was under no other duty.

## B. The claims against closing attorney Jerry Rosetti

### 1. *Failure to ensure contractual provisions*

¶15. The Lanes assert that their attorney, Jerry Rosetti, failed to ensure that all provisions of the sales contract were met prior to the closing of their residential property as they did not receive a copy of the termite report as the sales contract indicated. Rosetti contends he did what he was hired to do.

¶16. We have previously discussed this issue with respect to Oustalet and the theory of his failure to disclose the termite report and our ruling has not changed. The report was delivered to Rosetti and therefore, following agency law, this met the provision of providing a termite report to the buyers. All contractual provisions were met. This issue is without merit and the lower court was correct is granting the directed verdict.

### 2. *Breach of fiduciary duty*

¶17. Addressing an issue of legal malpractice, three elements must be proven by a preponderance of the evidence: (1) existence of a lawyer-client relationship; (2) negligence on the part of the lawyer in handling his client's affairs entrusted to him; and (3) proximate cause of injury. *Hickox, by and through Hickox v. Holleman*, 502 So. 2d 626, 633 (Miss. 1987). "Legal malpractice based on negligence concerns violations of the standard of care; whereas legal malpractice based upon breach of duty concerns violations of a standard of conduct." *Kilpatrick v. Wiley, Rein & Fielding*, 909 P. 2d 1283, 1290 (Utah App. 1996). As a result, the elements to be proven include (1) the existence of a fiduciary relationship between the plaintiff and the defendant attorney, (2) breach of that fiduciary relationship by the defendant attorney, and (3) the breach of fiduciary relationship as the proximate cause of loss to the plaintiff. *Id. See also Singleton v. Stegall*, 580 So. 2d 1242, 1245 (Miss. 1991), *Hickox*, 502 So. 2d at 633-34; *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.,* 665 A. 2d 1038, 1046 (Md. Ct. App. 1995).

¶18. The initial step is to determine if there was a relationship between Rosetti and the Lanes. Rosetti argues neither Oustalet nor the Lanes were his client, only that Owen hired him. However, the lower court ruled that Rosetti actually served two clients, Oustalet and the Lanes, and we agree. Further, we must note that the Lanes paid the fee for Rosetti's services. "The client's payment of a lawyer's fee cinches the point, although we have never held it a *sine qua non* the relationship has arisen." *Singleton v. Stegall*, 580 So. 2d 1242, 1244 (Miss. 1991). If reasonable persons could differ regarding the attorney-client relationship, the issue must be resolved by the fact finder. *Sheinkopt v. Stone,* 927 F. 2d 1259, 1264 (1st Cir. 1991). We are of the opinion that the Lanes did meet this burden in order to allow reasonable minds to differ and therefore granting a directed verdict would be reversible error. However, the discussion does not end at the first step.

¶19. The second element is breach of that duty. The termite report showed evidence of serious termite damage and suggested that an expert should look at the property. Rosetti called the dual agent Owen inquiring about the expert. Owen then informed the seller of the suggestion of the expert but not the buyer. Furthermore, this information concerning the report and expert was never given to the Lanes, prior to or at closing. Rosetti had the opportunity at closing to discuss the provisions of the report but chose not to inform the Lanes. Rosetti testified that he was sure he showed them the copy but he could not say with certainty due to the large volume of closings he did per week. Additionally, the signature line on the report was not signed by the buyer as required for proof of presentation. The trial court concluded as a matter of fact that the Lanes did not receive a copy of the inspection report prior to or at closing. Rosetti's clients were the Lanes and he had a duty to disclose all pertinent facts relating to the property.

¶20. The same standards of professional conduct are generally applicable to attorneys and physicians alike, namely:

> (1) Both are required to use that degree of care, skill and diligence which is commonly possessed and exercised by attorneys/physicians in that locality.

> (2) Neither is an insurer or guarantor of results which will be attained.

> (3) Unsuccessful results do not give rise to a presumption of negligence.

> (4) Both are liable only for negligent failure to use that requisite care and skill.

*Dean v. Conn*, 419 So. 2d 148, 150 (Miss. 1982). The generally accepted rule is that expert testimony is ordinarily necessary to support an action for malpractice of a professional man in those situations where special skills, knowledge, experience, learning or the like are required. *Id.* However, this rule does not apply only when the attorney's conduct is negligent as a matter of law. *Hickox*, 502 So. 2d at 635.

¶21. Rosetti was the only attorney to testify. Therefore, due to the failure to offer expert testimony, we can only agree with the lower court's granting of the directed verdict.

## C. The claims against Alfonso Realty, Inc.

### 1. *Breach of fiduciary duties.*

¶22. The Lanes contend that Owen, as a representative of Alfonso, breached her heightened fiduciary duty owed to them by failing to disclose the termite damage. Alfonso counters by arguing that the language of the contract bars any responsibility on their behalf. We agree with the Lanes.

¶23. Alfonso makes much of the language of the contract, specifically emphasizing in bold print the clause, "is in no way responsible for any termite damage" from paragraph twenty-one. However, Alfonso is misinterpreting the Lanes's argument. They are not attempting to hold Alfonso responsible for the damage itself, but for the breach of the owed fiduciary duty.

¶24. The standard of care owed of an agent has been described as "a duty to use the degree of diligence and care which a reasonable prudent person would ordinarily exercise in the transaction of his own business . . . ." *Lee Hawkins Realty, Inc., v. Moss*, 724 So. 2d 1116, 1120 (¶25) (Miss. Ct. App. 1998) (quoting *Lowery v. Guaranty Bank & Trust Co.*, 592 So. 2d 79, 83 (Miss. 1991)). More specifically, "a business

agent represents that he understands the usages of the business in which he is employed. One undertaking a matter involving special knowledge ordinarily thereby represents that he has the special knowledge required, and undertakes that, so far as it is necessary to keep in touch with events, he will do so." *Moss*, 724 So. 2d at 1120-21 (citing Restatement of Agency § 10 cmt. c (2d ed.)). As one commentator has observed:

> Real estate brokers are often in a very commanding position with respect to both sellers and buyers of residential property. The real estate broker's relationship to the buyer is such that the buyer usually expects the broker to protect his interest. This trust and confidence derives from the potential value of the broker's service; houses are infrequently purchased and require a trained eye to determine value and fitness. In addition, financing is often complex. Unlike other commodities, houses are rarely purchased new and there are virtually no remedies for deficiencies in fitness. In some respects the broker-buyer relationship is akin to the attorney-client relationship; the buyer, like the client, relies heavily on another's acquired skill and knowledge, first because of the complexity of the transaction and second because of his own dearth of experience.

Comment, *A Reexamination of the Real Estate Broker-Buyer-Seller Relationship,* 18 Wayne L. Rev. 1343 (1972).

¶25. Mississippi Code Annotated section 73-35-21 specifies that a real estate broker or salesman may be denied the privilege to conduct business for acting for more than one party in a transaction without the knowledge of all parties involved. Miss. Code Ann. § 73-35-21 (Rev. 2000). The prohibition of such an act follows the long established recognition that a broker holds a fiduciary relationship with its attendant duties to his/her principal requiring full disclosure, frankness and honesty in dealings with the principal. *Smith v. Sullivan*, 419 So. 2d 184, 187 (Miss. 1982); *Blanks v. Sadka*, 241 Miss. 821, 826, 133 So. 2d 291, 293 (1961). "Moreover, he must not put himself in a position antagonistic to the principal's interest by fraud or by representing others with interests adverse to his principal's interests." *Smith*, 419 So. 2d at 187 (citing *Randal Craft Realty Co., Inc. v Unijax, Inc.*, 653 F. 2d 1066, 1069 (5th Cir. 1981)); *Roy Realty Co. v. Burkhardt*, 146 Miss. 270, 270, 111 So. 289, 289 (1927)). *See also* Restatement (Second) of Agency, §§ 376-398 (1958) (enumeration of duties that agents owe their principals). A broker is subject to a duty to act solely for the benefit of the principal in all matters connected with the agency. *Century 21 Deep South Properties v. Corson*, 612 So. 2d 359, 368 (Miss. 1992).

¶26. Owen was a properly disclosed dual agent for both the buyers and the seller. Owen had to have written consent from all parties that were involved in the transaction, which she did. *See* Miss. Code Ann. § 73-35-21 (Rev. 2000). Prior to becoming the parties' dual agent, Owen had to disclose the competing obligations that she would owe to both the buyers and the seller. As a dual agent, Owen was responsible to both parties as principals, owing both parties a fiduciary duty. *See generally Smith*, 419 So. 2d at 187. Owen testified that she recognized that to perform as a dual agent would place a heightened duty to use the utmost care and caution in her actions. She illustrated this when she stated, "I have to be honest and disclose all the facts to both parties on all dealings."

¶27. Briefly reexamining the facts at bar, Rosetti received the inspection report recommending that an expert survey the damage. Rosetti called Owen, who called and hired Foster. Owen then called Oustalet. Owen chose not to call the Lanes. We find that this is where the breach of duty occurred. It matters not that the Lanes were previously informed of the alleged corrected termite damage by the disclosure statement,

the owed fiduciary duty was breached when Owen called one party and disclosed the derogatory information found on the termite report but specifically excluded calling the other party involved, the Lanes. As a dual agent, Owen knew and testified that she would represent competing interests and was required to disclose all facts to all parties. She disclosed to one party and chose not to disclose to the other party.

¶28. Examining Owen's direct testimony at trial, we are of the opinion that sufficient evidence was presented that a question existed for the jury to decide if Owen failed to uphold her fiduciary duty owed to the Lanes. Specifically, Owen's testimony is:

> **Q.** You understand what a fiduciary duty of a real estate agent is, don't you, Ma'am?
>
> **A.** Yes, sir, I do.
>
> **Q.** And that is a duty of honesty?
>
> **A.** Yes, sir, it is.
>
> **Q.** And it is a duty to disclose to the purchaser all material information about the property, correct?
>
> **A.** Yes, sir.
>
> **Q.** Would you consider a WIR report that recommends evaluation for termite damage repair be material information that a person might want to know?
>
> **A.** Yes, sir. That's why I ordered one.

¶29. When asked whether she told the Lanes about the termite report, Owen said, "No, sir, I did not." When asked whether she ever gave the Lanes a copy of the Foster inspection report, her answer again was "No, sir, I did not."

¶30. The disclosure statement given to the Lanes concerning the property in question did give them notice of prior infestation. Furthermore, the statement also informed the Lanes that all damage done by the pests was repaired. The Lanes understood the disclosure statement was an important document and thought, based on what it reported, that all damage had been properly repaired, as evidenced by Mr. Lane's direct testimony:

> **Q.** Baxter, tell the jury, did you know on October 10, 1996, that the house had had a prior infestation of termites?
>
> **A.** Yes. The disclosure statement had mentioned that there had been some damage in the past. It also mentioned that the damage had been repaired.
>
> \* \* \* \*
>
> **Q.** And prior to signing that disclosure statement, did you understand it was an important document?
>
> **A.** Yes, because again it was a statement by the seller indicating the condition of the house and what they knew about the house. So it was important. .
>
> \* \* \* \*

**Q.** In the past -- I think there's been some mentioned in the opening statements, you've had termites in a home you've owned before. Is that -

**A.** That's correct. When we lived on Long Island, New York the land is very much like it is down here in Mississippi, kind of sandy soil, and termites were not unusual in that area as they are here. So we had had some experience with it, and while we were living in the home, we came across some termites and had to take care of the problem as well.

And that's why I knew that when I saw it here, it was not something that scared me off because I had had to deal with termites. We had to repair the damage and disclose that condition there, which we did. We took care of the damage. We replaced all of the damaged area, and when we filled out the form, indicated not only that there had been damage, but also that we had repaired it.

* * * *

**Q.** In the context of the disclosure statement, was it important to you?

**A.** Well, the disclosure statement basically said there was a problem. Mr. Oustalet said he repaired it. The disclosure statement said it was there. The termite inspection was what I was going to rely on to ensure that not only was the damage repaired -- Well, that it was clean of active infestation, but also that the damage that Mr. -- that the disclosure statement indicated had been repaired had in fact been repaired.

¶31. Provision twelve of the sales contract was a special provision included by the Lanes for a home inspection. This inspection was to be limited and was in addition to the termite inspection, not in lieu of the termite inspection. As the sales contract specified, the home inspection was completed within five days of the contract. However, the home inspection did not reveal anything concerning the termite damage under the home. Furthermore, the actual home inspection report was not allowed into evidence. We can only speculate as to why the home inspector did not find any damage to the foundation of the home. However, Baxter Lane did speak briefly to this matter at trial:

**A.** Okay. I believe in their language in this contract it says that he's (the home inspector) not a qualified termite inspector and that further inspection would be required by a qualified individual.

**Q.** What did the qualified home inspector tell you you needed to do?

**A.** He told me that I needed to get a qualified structural person down there.

**Q.** Structural inspection.

**A.** Exactly.

¶32. The home inspector, whose contract indicated that he was not a qualified termite inspector, recommended to have a termite man inspect the property. The qualified termite inspector recommended that a structural damage expert should examine the property. The qualified termite inspector was Orkin and the qualified structural person was Foster. Mr. Lane did not have the opportunity to do what was recommended in the report because he never saw a copy of Orkin's report until after he had taken possession of the home. As stated, he was never advised by Owen or Rosetti, who received the termite

inspection report directly, that a problem was presented on the termite inspection.

¶33. As previously stated, Owen had a heightened fiduciary duty as a dual agent. She failed in this duty. Paragraph four of the contract states "if buyer deems damage unacceptable, contract shall be declared null and void . . . ." Buyer Lane did not get the opportunity to take advantage of this provision. Rosetti, Owen and Oustalet all knew of the negative marks on the inspection. The Lanes did not. If they had been made aware of the structural problem, with an estimated repair cost exceeding $35,000, testimony revealed that they would not have completed the transaction.

¶34. The termite inspection report was filled out by Orkin Pest Control technician Ben Watson. Orkin was the company hired by Owen. Please note that this hiring was a violation of provision four of the sales contract which states the broker does not recommend any pest control company. Owen hired Orkin and she also hired Foster as the expert. Mr. Watson testified that in his thirty-one years of experience he has filled out thousands of termite inspection reports. On cross-examination, Mr. Watson testified as follows:

> **Q.** Okay. You checked off this part about recommended evaluation by a qualified expert. You checked "yes" for damage, right?
>
> **A.** Right.
>
> **Q.** When you see any damage, do you always check that off?
>
> **A.** Yes, sir.
>
> **Q.** So it's just a matter of routine?
>
> **A.** Not necessarily. If it's extreme damage, then you make darn sure you put it down.
>
> **Q.** But you usually check it off?
>
> **A.** Usually only if it is extreme. This warrants whether it needs to be inspected, yes, sir. it's not a common routine because they had a minor 2 by 4 that didn't have anything structurally supporting anything, you wouldn't normally check it.

¶35. As we have previously said, this report was forwarded directly to Rosetti. He examined the document, as closing attorneys do, and called Owen about the need for an inspection by an expert. He specifically telephoned Owen to have her hire an expert to go look at the property and determine if any further damage needed repairing. Concerning the expert, Rosetti testified on direct:

> **Q.** So having this kind of report was not part of the contract nor part of the lender's instructions, correct?
>
> **A.** No, it was not required.
>
> **Q.** It was not required under the contract, correct?
>
> **A.** Yes.
>
> **Q.** Why did you get it? Did you ask for it?

**A.** Yes. When I received the copy of the wood infestation report, I noted down at the bottom or one of the places on the report it states in there that a recommended evaluation by a qualified expert to determine if repairs are needed. In the course of business, I just felt like that this was something needed to be done.

I know in the past when a mortgage company requires this -- I mean, gets a wood infestation report that has this checked on it, they require that a licensed contractor inspect the premises to make sure that the structure is -- I mean, that the house is structurally sound and it has not been devalued by the deterioration or the damage.

¶36. Owen testified that she, upon notification from Rosetti, called Foster Construction to see if they would go look at the home for new damage. She then called the seller Oustalet, going beyond the required duty, to inform him of the need for an expert. By specifically calling Oustalet, Owen was then required to call the Lanes to give the same treatment to both of her principals. Owen said the reason she used Foster is because she had previously seen their vehicles at the home. Mr. Foster said that he did do the previous repair work and would go look for any new damage. To reiterate, when Ms. Owen was questioned if she called the buyers of the property concerning the expert she stated, "No sir, I did not."

¶37. Owen knew what she should have done, but in actuality she did not comply. Rosetti's office informed Owen of the need to hire an expert to examine the termite damage, Owen then hired an expert and she then contacted Oustalet. She did not inform the Lanes of any dealings with a damage expert or of the termite report itself. Had the facts shown that it was Owen who realized the expert consultant was recommended and telephoned Rossetti and Oustalet, the owed fiduciary duty would have been upheld as the Lanes would have been put on notice by Owen informing their agent Rossetti. However, the facts were not as illustrated in the example above. Rosetti called Owen and then Owen called Foster and Oustalet. She upheld her heightened duty for full disclosure to the seller but it appears she failed in her heightened duty to the buyers. The Lanes met their burden of proof and the question of fact as to damages should have been decided by the jury. Therefore, we reverse the decision of the trial court with respect to appellee Alfonso Realty, Inc., and order a new trial on this question of liability and damages as a result thereof.

### 2. *Misrepresentation*

¶38. Appellants set out a theory of misrepresentation initially but fail to address it in their brief. As stated previously concerning Oustalet, we will not address propositions that are unsupported by reasons and authority and therefore this proposition is considered to have been waived. *Thibodeaux*, 652 So. 2d at 155; *Dozier*, 157 So. 2d at 799.

### 3. *Alfonso's public policy argument*

¶39. The Lanes are not attempting to hold Alfonso responsible for the termite damage itself. However, the breach of the fiduciary duty, not the termite damage itself, does allow for monetary damages to be assessed against Alfonso.

¶40. Although Alfonso is incorrect in their interpretation of the prayer of the Lanes for the reasons we have previously sated, Alfonso does make a worthwhile public policy argument concerning a "surety-like obligation" which would be imposed on brokers if this case were to go to a jury. We agree that it would be "patently unreasonable" to hold a realtor responsible "for failing to disclose the possibility of a need for

repair of termite damage when no one was aware that repair was possibly necessary at any time until well after the closing." However, that was not the fact scenario in the case at bar. All parties are only now well aware that a recommendation was made for expert inspection of the property to determine if further repair was warranted. Unfortunately, the Lanes were not made aware of the situation until after closing. Alfonso further asserted in its brief to this Court that "Ms. Owen did everything she knew to do and simply followed normal business practices." We cannot agree with this statement. Ms. Owen did not do everything she knew to do as she stated in her testimony that the fiduciary duty of a dual agent is heightened and she would "have to be honest and disclose all the facts to both parties on all dealings." She did not do this. She specifically called one party and specifically failed to call the other party. Thus, a breach of the owed fiduciary duty.

¶41. **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED AS TO A. J. M. OUSTALET, JR. AND JERRY ROSETTI, ESQUIRE AND REVERSED AND REMANDED AS TO ALFONSO REALTY, INC. TWO THIRDS OF THE COSTS ARE ASSESSED TO APPELLANTS AND ONE THIRD OF THE COSTS ARE ASSESSED TO APPELLEE ALFONSO REALTY, INC.**

**KING, P.J., IRVING, CHANDLER AND BRANTLEY, JJ., CONCUR. McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., THOMAS AND MYERS, JJ. LEE, J., NOT PARTICIPATING.**

McMILLIN, C.J., DISSENTING:

¶42. I respectfully dissent. It is my view that Alfonso Realty met its fiduciary duty to disclose known problems to the Lanes when it made sure that the Lanes were aware of the previous termite infestation and subsequent repair efforts. This necessary disclosure was made prior to the time of contracting and prompted the Lanes to insert into the contract a special provision permitting them the right to have their own independent professional inspection of the property for structural damage as a prerequisite to proceeding with the transaction - an inspection which was, in fact, conducted and the contents of which were apparently satisfactory to the Lanes since they proceeded to close the sale at the appointed time.

¶43. The termite report did not indicate a current infestation, but simply noted the presence of prior infestation damage. The printed text of the termite report corresponding to the box checked by the termite inspector said only: "Recommend evaluation by qualified expert to determine if repairs are needed." There was no new or previously undisclosed information in that statement or anywhere else in the report. While a real estate sales agent representing a buyer certainly owes a fiduciary duty to disclose potential problems, I would not hold that the duty extends to requiring a re-notification every time a matter previously disclosed is reconfirmed from some other source.

**SOUTHWICK, P.J., THOMAS AND MYERS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**