**WINDSOR VILLAGE OF CLINTON, LLC, Landmark Apartments, LLC, and Woods of Lakeland, LLC Plaintiffs**

v.

**SOLON AUTOMATED SERVICES, INC., and Coinmach Corporation Defendants**

No. CIV.A. 3:04CV669WHBAGN.

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 15, 2005.

Steven H. Smith, Dunbarmonroe, PLLC, Jackson, MS, for Plaintiffs.

D. Stephen Brouillette, Jr., Kelly D. Simpkins, Wells, Marble & Hurst, Jackson, MS, for Defendants.

### OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on Defendants' Motion for Summary Judgment. Having considered the Motion, Response, Rebuttal and all attachments to each, as well as supporting and opposing authority, the Court finds that the Motion for Summary Judgment is well taken and should be granted.

### I. Factual Background and Procedural History

This declaratory judgment cause of action arises out of three contracts. The contracts involve the lease of laundry rooms at three apartment complexes. In each contract, the lessor rented the laundry room of the apartment complex to the

lessee, and the lessee in turn agreed to install and maintain laundry equipment on the premises.

The first lease was between lessor J. Ed Turner as owner of Plaintiff Windsor Village Apartments, and lessee Defendant Solon Automated Services, Inc. Windsor Village of Clinton, LLC is the successor in interest to Windsor Village Apartments, and Coinmach Corporation is the successor in interest to Solon Automated Services, Inc. This lease is referenced herewith as the "Windsor Village Lease." [1] The Windsor Village Lease was signed on April 10, 1980, and carried an initial term of ten years.[2] Provisions for ten year renewal terms were included in the lease. Those terms, which are further addressed below, form the basis of the controversy before the Court.

The second lease was also signed on April 10, 1980. This lease was between lessor J. Ed Turner as owner of Plaintiff Landmark Apartments, and lessee Defendant Solon Automated Services, Inc. The Court refers to this lease as the "Landmark Apartments Lease." The terms and conditions of the Windsor Village Lease and the Landmark Apartments Lease are functionally identical.

The third and final lease was executed on April 19, 1996, and carried a term of five years. The lease was between Plaintiff Woods of Lakeland as the lessor, and Defendant Solon Automated Services, Inc. as the lessee. This lease is referred to herewith as the "Woods of Lakeland Lease." The Woods of Lakeland Lease contained no provisions for renewal of the lease after expiration of the five year lease term.

Seeking to terminate and cancel the leases described above, Plaintiffs file the subject declaratory judgment suit in the County Court for the First Judicial District of Hinds County, Mississippi on August 2, 2004. Defendants removed the case to this Court on August 23, 2004.[3] The subject Motion for Summary Judgment was filed by Defendants on July 20, 2005. All parties and the Court agree that the issues before the Court are *legal* in nature; i.e., the Court has no disputed issues of *fact* before it. *See* Defendants' Motion for Summary Judgment, p. 3; Plaintiffs' Response to Defendants' Motion for Summary Judgment, p. 2. Accordingly, Plaintiffs' claims are ripe for final disposition on summary judgment.

## II. Analysis

The first lease considered is the Woods of Lakeland Lease. The Court is uncertain as to why this lease agreement was included in the subject suit. The inception date of the Woods of Lakeland Lease was April 19, 1996, and the lease carried only a five year term, with *no renewal provisions*. As Defendants agree, the term of the lease has long-since expired, and the lease is now terminable at will by either party. The Court therefore finds that the Woods of Lakeland Lease has expired, and that it may be terminated at will be either party to the lease.

---

1. A copy of the Windsor Village Lease is attached as Exhibit "A" to the Complaint.

2. The ten year term did not begin until the laundry equipment was installed on the property. The Court has not been informed as to what that date was. A reasonable assumption is that the equipment was installed, and thus the lease term began, soon after the lease was signed on April 10, 1980.

3. The case was removed on the basis of diversity of citizenship jurisdiction under the provisions of 28 U.S.C. § 1332. The parties agree that complete diversity of citizenship exists, and that the amount in controversy exceeds $75,000.00. The Court therefore finds that it may exercise jurisdiction over this case pursuant to § 1332.

The Court considers the Windsor Village Lease and the Landmark Apartments Lease in conjunction with one another. As stated above, the terms of these two leases are functionally identical. The inception date of both leases was on or about April 10, 1980. Each carried an initial lease term of ten years, and each had provisions for successive ten year renewal terms. The renewal provisions are in issue in this case. Plaintiffs contend that since the initial ten year term has expired, the Windsor Village Lease and the Landmark Apartments Lease can be terminated by Plaintiffs after giving Defendants the required notice. Defendants argue that once a ten year renewal period had been entered, the leases cannot be cancelled until the end of that ten year term, and then only by providing notice of cancellation one hundred and eighty days in advance. Based on the plain language of the lease agreements, the Court agrees with Defendants.

Before analyzing the subject leases, this Court must set forth the standard for construing contracts under Mississippi law. The Mississippi Supreme Court summarized this standard in *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So.2d 748 (Miss.2003).

> This Court has set out a three-tiered approach to contract interpretation. *Pursue Energy Corp. v. Perkins*, 558 So.2d 349, 351–53 (Miss.1990). Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. *Cooper v. Crabb*, 587 So.2d at 241; *City of Grenada v. Whitten Aviation, Inc.*, 755 So.2d 1208, 1214 (Miss.Ct.App.1999). First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. *Pursue Energy Corp.*, 558 So.2d at 352 (citing *Pfis-*

*terer v. Noble*, 320 So.2d 383, 384 (Miss. 1975)). We must look to the "four corners" of the contract whenever possible to determine how to interpret it. *McKee v. McKee*, 568 So.2d 262, 266 (Miss.1990). When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses. *Brown v. Hartford Ins. Co.*, 606 So.2d 122, 126 (Miss.1992). Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. *Simmons v. Bank of Miss.*, 593 So.2d 40, 42–43 (Miss.1992). Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. *Id.* (citing *Cooper*, 587 So.2d at 241). On the other hand, if the contract is unclear or ambiguous, the court should attempt to "harmonize the provisions in accord with the parties' apparent intent." *Pursue Energy Corp.*, 558 So.2d at 352. Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. *Id.* "[T]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Turner*, 799 So.2d at 32; *Cherry v. Anthony*, 501 So.2d 416, 419 (Miss.1987).

Secondly, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. *Pursue Energy Corp.*, 558 So.2d at 352. Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party. *Leach v. Tingle*, 586 So.2d 799, 801–02 (Miss.

1991) (citing *Stampley v. Gilbert,* 332 So.2d 61, 63 (Miss.1976)). Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. *Id.* It is only when the review of a contract reaches this point that prior negotiation, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract. "Of course, the so-called three-tiered process is not recognized as a rigid 'step-by-step' process. Indeed, overlapping of steps is not inconceivable." *Id.* at 351 n. 6.

*Id.* at 752–53.

Under the first step for contract interpretation, a court must look at the plain language of the contract. If the language is clear and unambiguous, then the second and third steps are inapplicable. In this case, the Court finds that the language of the Windsor Village Lease and the Landmark Apartments Lease is clear and unambiguous regarding the lease terms and lease renewal provisions. Accordingly, the second and third steps for contract interpretation are not considered herewith.

Both of the subject leases state:

1. LESSOR herewith leases unto said LESSEE, and LESSEE hereby rents from LESSOR the Laundry room(s) on the premises described above commencing on date of lease and ending ten (10) years after Laundry equipment installation is completed.

\*    \*    \*    \*    \*    \*

6. This Lease shall be automatically renewed for the successive periods unless cancelled in writing by certified or registered mail by either party 180 days prior to its expiration.

Windsor Village Lease, Exhibit "A" to Complaint; Landmark Apartments Lease, Exhibit "B" to Complaint.

This contract language clearly calls for initial lease terms of ten years, which have expired, and successive ten year renewal periods unless notice of cancellation is given one hundred and eighty days prior to the expiration of the ten year lease periods in effect. Because Plaintiffs opted not to give notice of lease cancellation one hundred and eighty days prior to April 10, 1990, and April 10, 2000, successive ten year lease periods went into effect. Under the currently effective renewal periods, this Court finds that both the Windsor Village Lease and the Landmark Apartments Lease remain in force until April 10, 2010. This finding leads the Court to further find that Defendants' Motion for Summary Judgment is well taken and should be granted.

### III.  Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (docket entry no. 6) is hereby granted. A Final Declaratory Judgment will be entered which details the rights and obligations of the parties, based on the holdings presented above.